**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| *In re:* )<br>)<br>GLYN NEAL OWEN, )<br>)<br>                              Debtor. )<br>)<br>CGH TECHNOLOGIES, INC. )<br>)<br>                              Plaintiff, )<br>)<br>v. )<br>)<br>GLYN NEAL OWEN, )<br>)<br>                              Defendant. ) | Case No. 24-10897-BFK<br><br>Chapter 13<br><br><br><br><br><br><br><br>Adv. Proc. No. 24-_____ |

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT**

CGH Technologies, Inc. ("**CGH**" or the "**Company**") brings this Complaint against the debtor Glyn Neal Owen ("**Mr. Owen**" or "**Defendant**") to obtain a determination that the debt Mr. Owen owes to CGH is nondischargeable pursuant to section 523(a)(4) of the United States Bankruptcy Code. In support of the relief sought herein, CGH makes the following representations:

**PRELIMINARY STATEMENT**

1.       CGH files this Complaint seeking a judgment of the Court that Mr. Owen's debt to CGH is "nondischargeable" pursuant to 11 U.S.C. §523(a)(4).

2.       Mr. Owen is liable to CGH in the aggregate amount of at least $1,181,651.07 plus post-judgment interest (the "**Debt**").

---

Stephen E. Leach (Va. Bar No. 20601)
David I. Swan (Va. Bar No. 75632)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8911
Email: dswan@hirschlerlaw.com

*Counsel for Defendant Glyn Neal Owen*

3. Mr. Owen's Debt was established by the Superior Court of the District of Columbia (the "**Superior Court**") in Case No. 2020 CA 002038 B, as described further below. The Superior Court has entered judgments in favor of CGH against Mr. Owen in the amount of $163,382.44 on February 24, 2022, and in the amount of $917,815.50 on October 12, 2023. Mr. Owen did not appeal and the Superior Court judgment Orders are final.

4. Mr. Owen was the Chief Operating Officer ("COO") of CGH and its *de facto* Chief Financial Officer. The Superior Court litigation related to Mr. Owen's violations of a non-compete agreement, a non-disclosure agreement, and breach of his fiduciary duties to the Company, which are further described in this Complaint.

5. Mr. Owen willfully, maliciously, without just cause or excuse, and with the intention of causing injury and harm to CGH, violated his fiduciary obligations by competing against his former employer, taking its intellectual property and sharing it with competitors, and subjecting CGH to damages and costs by intentionally violating labor laws.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b).

7. This is a core proceeding under 28 U.S.C. §157(b)(2)(I).

8. Venue of this proceeding is proper in this district under 28 U.S.C. §1409(a).

## THE PARTIES

9. CGH is a Maryland corporation with its principal place of business located at 400 Virginia Avenue SW, Suite 700B, Washington, DC 20024. CGH is a woman-owned small business that provides information engineering solutions, software development, and management

support services to the United States government, foreign governments, and private sector organizations.

11. Mr. Owen is an individual residing at 1131 Tournai Court, Woodbridge, Virginia 22191. Mr. Owen is the debtor in the above-captioned chapter 13 bankruptcy case (the "**Bankruptcy Case**").

## FACTUAL BACKGROUND

11. Among other things, CGH develops, implements, and licenses software products, including the Aeronautical Surface Screening Evaluation Tool ("**ASSET**"), which allows customers to collect and analyze aeronautical data for aviation decision-making purposes.

12. Mr. Owen was hired by CGH in March 1998 as a Contracts Administrator. By 2004, Owen became the Company's COO. As COO, Mr. Owen reported only to Cindy Troutman, CGH's President and sole shareholder.

13. As COO, Mr. Owen was responsible for business development, contract compliance, the Company's accounting practices, managing the Accounting/Finance Department, budget planning, and setting indirect rates and pricing for the Company's government contracts.

14. Mr. Owen also had primary responsibility for marketing the ASSET software to various European entities, and secured a contract for CGH with the Irish Aviation Authority for the implementation and deployment of ASSET.

### The Non-Compete and Non-Disclosure Agreements

15. Mr. Owen had access to all of CGH's confidential and proprietary information, including software coding for the ASSET program.

16. In 2008, Mr. Owen executed an Employee Non-Compete Agreement (the "**Non-Compete Agreement**"), a copy of which is attached hereto as **Exhibit A**, and a Non-Disclosure

3

and Non-Solicitation Agreement (the "**Non-Disclosure Agreement**"), a copy of which is attached hereto as **Exhibit B**.

17. The Non-Compete Agreement provides, among other things, that for the period of his employment at CGH, and for one year after the employment ends, Mr. Owen will not "either directly or through others, solicit work from or perform services for, any customer of the Company which is or are in any way similar to the work or services performed by [him] while employed by the Company." *See* Exhibit A, art. 2.

18. The Non-Disclosure Agreement provides, among other things, that Mr. Owen will "hold in trust and confidence all confidential information and trade secrets of CGH during the period of [his] employment with CGH and for a period of two years after the termination of [his] employment with CGH for any reason." *See* Exhibit B, art 3.

**The Fair Labor Standards Act Lawsuit**

19. Beginning in 2011, CGH entered into a series of contracts with a prime contractor of the Federal Aviation Administration ("**FAA**"), pursuant to which CGH supplies a national team of technicians to service various FAA facilities around the country.

20. CGH's business model dictated that it engage technicians on the FAA contract as 1099 independent contractors; however, Mr. Owen directed the CGH project managers responsible for administration of the contract to allow technicians to choose whether they wanted to be an independent contractor or W-2 employee, and to treat the technicians as part-time workers, ineligible for overtime pay.

21. On October 25, 2019, a CGH employee filed a collective action complaint (the "**FLSA Lawsuit**") against CGH under the Fair Labor Standards Act ("**FLSA**"), alleging that CGH had failed fully to compensate him and similarly situated technicians for overtime work.

22. CGH terminated Mr. Owen for cause in December 2019 when it learned of Mr. Owen's role in creating the circumstances that gave rise to the FLSA Lawsuit.

**Other Improper Conduct is Discovered**

23. As CGH was investigating Mr. Owen's role and the circumstances giving rise to the FLSA Lawsuit, CGH was informed by certain of its existing and potential customers that Mr. Owen was attempting to solicit business for himself at CGH's expense by, among other ways, disparaging CGH's technical expertise and financial standing.

24. Both before and after his termination, Mr. Owen contacted a number of CGH's actual and prospective customers to falsely inform them that CGH staff was incompetent, that CGH was not capable of implementing ASSET and only he could do so, and that CGH was in poor financial condition.

25. As CGH investigated the attempted solicitation of its existing and potential customers, CGH also discovered that Mr. Owen had misappropriated confidential and proprietary information, including versions of the software code for ASSET.

26. Mr. Owen forwarded to his personal Gmail account and otherwise took physical or electronic possession of proprietary information and documentation, not only substantial elements of the software coding for CGH's ASSET program, but also confidential contract information, login and password information, and test site information.

27. Mr. Owen also had created unauthorized Google Docs and DropBox accounts, which he populated with CGH confidential information and shared with third parties.

**The Superior Court Litigation**

28. On March 26, 2020, CGH filed a lawsuit (the "**Superior Court Litigation**") against Mr. Owen in the Superior Court, asserting claims for breach of contract, breach of fiduciary

duty, fraud, trade libel, and conversion. On June 5, 2020, Mr. Owen filed a counterclaim against CGH, asserting claims for retaliation in violation of the False Claims Act and for conversion.

29. On November 5, 2021, the Superior Court entered partial summary judgment ("**Summary Judgment Order**") in favor of CGH on the breach of contract and breach of fiduciary duty counts, and also entered summary judgment in favor of CGH on Mr. Owen's counterclaim. A copy of the 37-page Summary Judgment Order is attached hereto as **Exhibit C**.

30. Among other things, in the Summary Judgment Order the Superior Court found it undisputed that:

    a. In November 2019, before he was terminated, Mr. Owen expressed to Douglas Campbell of Syneca Research Group, LLC ("**Syneca**") that he wanted a FOCA data collection services contract "taken away" from CGH. In February 2020, after he was terminated, Mr. Owen began working with Mr. Campbell to submit a bid for the FOCA contract on behalf of Syneca. Moreover, "though CGH had not licensed ASSET to Syneca, in their bid for the FOCA contract, Mr. Owen and Mr. Campbell wrote that Syneca had the necessary intellectual rights to ASSET to bid the contract." *See,* Exhibit C at 9, 11.

    b. "On or about February 29, 2020, Mr. Owen created an account on the non-production servers of CGH and used that account to log into the ASSET application in order to obtain documents for data collection services and the AIXM data catalogs. When Owen's access to the ASSET application was discovered, Jason Moore, the Help Desk Support Specialist/Project Coordinator for CGH, disabled Mr. Owen's 'unauthorized' account." *See,* Exhibit C at 11.

    c. "In April and May 2020, Mr. Owen worked with Mr. Campbell to bid on an FAA contract for Professional Support Services on behalf of Perspecta, Inc., a CGH competitor." *See,* Exhibit C at 12.

    d. "At unspecified times, Mr. Owen sent several CGH confidential documents to his personal email account from his CGH email account, including internal pricing data for the CMC Contracts. Forensic examination of Mr. Owen's personal computer showed that he accessed the internal pricing data (Excel file "Staffing-GOV2_GO.xlsx") on or about October 3, 2020. Six days later, on

    October 9, 2020, Mr. Owen's name appeared on a PowerPoint presentation put together by Crown Consulting, Inc. ("**Crown**"), a CGH competitor, about CGH contracts it planned to pursue, including the CMC Contracts." *See,* Exhibit C at 12-13.

  e. "In October 2020, in an attempt to obtain a consulting contract with Crown, Mr. Owen and Mr. Campbell prepared a document entitled 'Strategy to go after CGH expiring contracts,' and sent the document to Al Kahn, Crown's CEO." *See,* Exhibit C at 13.

  f. "Despite his former counsel's warning to preserve all relevant emails, text messages, and documents beginning in late January or early February 2020, and CGH's litigation hold letter dated April 24, 2020, Mr. Owen has admittedly routinely deleted emails and text messages that were potentially responsive to CGH's discovery requests." *See,* Exhibit C at 11 (fn 5).

31. On February 24, 2022, the Superior Court entered an Order that directed Mr. Owen to pay CGH a total of $163,382.44 for attorney's fees and costs in connection with its prosecution of the claims that had been awarded summary judgment, and a related motion to compel discovery.

32. On April 20, 2023, the Superior Court entered a default order against Mr. Owen on the remaining claims filed by CGH, because Mr. Owen failed to appear for the pretrial conference.

33. On October 12, 2023, the Superior Court entered judgment (the "**Damages Order**") in favor of CGH on the remaining claims, in the amount of $228,000 for violation of the Non-Compete Agreement and $700,726 for breach of fiduciary duty. More specifically, the Superior Court found in the Damages Order that as a result of Mr. Owen's breach of his Non-Compete Agreement, CGH lost a major portion of its business with the Irish Aviation Authority, and the value of that contract, just for the year 2020, was $228,000.

34. In addition, the Superior Court found in the Damages Order that CGH's failure to pay overtime wages, which triggered the FLSA Lawsuit and a Department of Labor investigation, was at Mr. Owen's direction. Therefore, the Superior Court held Mr. Owen responsible for CGH's

7

attorneys fees and costs in defending these actions, under the "wrongful involvement in litigation" standard.

## COUNT ONE
## 11 U.S.C. § 523(a)(4) – FRAUD OR DEFALCATION AS A FIDUCIARY

35. CGH adopts, realleges, and incorporates the previous paragraphs of this Complaint as if fully set forth herein.

36. Pursuant to section 523(a)(4) of the Bankruptcy Code, Mr. Owen is not entitled to discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

37. Mr. Owen served in a fiduciary capacity in his role as the COO of the Company, and owed fiduciary duties thereto.

38. Mr. Owen willfully, maliciously, recklessly, in conscious disregard of his contractual and fiduciary duties to the Company, and without just cause or excuse competed against CGH, disparaged CGH, and solicited business for himself and CGH's competitors.

39. Mr. Owen willfully, maliciously, recklessly, in conscious disregard of his contractual and fiduciary duties to the Company, and without just cause or excuse, misappropriated CGH's proprietary and confidential information, which he used for his benefit.

40. Mr. Owen willfully, maliciously, recklessly, in conscious disregard of his contractual and fiduciary duties to Plaintiff, and without just cause or excuse, directed CGH program managers to allow technicians to be hired as W-2 employees rather than 1099 independent contractors, which subjected CGH to attorneys fees and costs of more than $700,000 defending a Department of Labor investigation and the FLSA Lawsuit for failure to pay overtime.

41. Through the foregoing actions, Mr. Owen is liable to Plaintiff for fraud or defalcation as a fiduciary in the amount of the Debt that was established by the Superior Court.

42. The findings and rulings of the Superior Court, set forth in the Summary Judgment Order, the Damages Order, and otherwise, are entitled to collateral estoppel effect against Mr. Owen in this proceeding.

## COUNT TWO
## **DETERMINATION OF THE DEBT AS NONDISCHARGEABLE**

43. CGH adopts, realleges, and incorporates the previous paragraphs of this Complaint as if fully set forth herein.

44. To the extent application of collateral estoppel principles to the record developed in the Superior Court Case does not fully resolve and establish the nondischargeable nature and basis of the Debt, the Company requests that this Court determine that the Debt is nondischargeable through this proceeding.

WHEREFORE, CGH respectfully requests (a) a determination that the Debt is non-dischargeable under section 523(a)(4) of the Bankruptcy Code for fraud or defalcation as a fiduciary of CGH; and (b) such other relief as may be just and appropriate.

Dated: August 19, 2024                     Respectfully submitted,

*/s/ David I. Swan*
David I. Swan (Va. Bar No. 75632)

*/s/ Stephen E. Leach*
Stephen E. Leach (Va. Bar No. 20601)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Email: dswan@hirschlerlaw.com
         sleach@hirschlerlaw.com

*Counsel for CGH Technologies, Inc.*