**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| GLYN NEAL OWEN, ) | Case #24-10897-BFK |
| ) | (Chapter 13) |
| Debtor. ) | |
| ) | |

### MOTION TO DISMISS CASE

CGH Technologies, Inc. ("CGH"), a partially secured creditor in the above-captioned case, by counsel, hereby moves this Court to dismiss the case for cause under 11 U.S.C. § 1307(c). Sections 1325(a)(3) and (a)(7) of the Bankruptcy Code, 11 U.S.C., provide as elements of confirmation of a Chapter 13 plan that the plan must have been "proposed in good faith" and that "the action of the debtor in filing the petition was in good faith." Because the Debtor fraudulently conveyed his real estate assets prepetition and made false oaths in his bankruptcy schedules, he will be unable to carry his burden of good faith for confirming a plan in this case. Such failure constitutes "cause" for dismissal. In further support of this Motion, CGH submits the following:

Facts

The Debtor commenced this case by filing a voluntary petition under Chapter 13 of the Bankruptcy Code on May 13, 2024 (the "Petition Date"). Among the Debtor's assets, as reported on Schedule A/B were a single-family residence located at 1131 Tournai Ct., Woodbridge, VA 22191 (the "VA Property") and checking and savings accounts at Bank of America (the "Bank Accounts") reflecting balances of $0. On July 30, 2024, the Debtor filed an amended Schedule A/B (DOC 21) with this Court, reflecting combined balances of $6.96 in the Bank Accounts. As

set forth in the letter attached hereto as Exhibit 1, the Bank Accounts actually held $13,601.80 as of the Petition Date.

The amended Schedule A/B also disclosed for the first time that the Debtor–jointly with "another"–owns real estate in Carthage, NC (the "NC Property) and valued his half-interest therein at $75,000. As set forth on the Non-Warranty Deed dated February 15, 2021, attached hereto as Exhibit 2, it appears that the co-owner of the NC Property is the Debtor's wife Delise Owen, and that pursuant to such deed the Debtor transferred the NC Property from his sole ownership to joint marital ownership. The deed was recorded in the applicable county land records on March 18, 2021. At his creditors' meeting in this case, the Debtor testified that his wife did not pay him for this transfer. Exh. 3 (Tr. at 7 lines 19-21). Because this deed transferred title to the Debtor and his "wife," it created a tenancy by the entirety under North Carolina law. N.C. Gen. Stat. § 41-56(a).

About the same time as he transferred the North Carolina Property to T/E ownership, the Debtor also transferred the VA Property from his sole ownership to himself and his wife as "tenants by the entirety" pursuant to a Deed Of Gift dated March 24, 2021, which was recorded on March 29, 2021. This deed recited that it was made in consideration for "Zero Dollars ($0.00)." Exh. 4.

The effect of these transfers to tenancy by the entireties ownership was to place the Debtor's solely owned real estate beyond the reach of his non-joint creditors, like CGH.

At the time of these prepetition transfers, the Debtor was defending litigation that CGH had commenced against him in the D.C. Superior Court on March 26, 2020 (the "Lawsuit"). The Lawsuit ultimately resulted in a judgment in favor of CGH on October 12, 2023 in the amount of $928,726 plus interest (the "Judgment"). Specifically, at the time of these transfers the Debtor

had been defending a motion to compel discovery in the Lawsuit and had just been ordered, on February 4, 2021, to compel discovery and to submit to a forensic examination of his email and cloud accounts and his electronic devices for "fail[ure] to comply with his discovery obligations to search for, preserve, and produce discoverable material responsive to the plaintiff's discovery requests" and failure to provide complete answers to interrogatories. Exh. 5 at 2 & 4 (Order of the D.C. Superior Court). The court also found that the Debtor deleted responsive emails, discarded his personal computer, and traded in his personal phone during the litigation and without attempting to preserve responsive data, even after his receipt of a letter from the plaintiff on April 24, 2020 directing him to preserve potentially discoverable material. Id. at 2-3. The court ordered the Debtor to comply with his discovery obligations, submit to the forensic examination, and pay the plaintiff's attorneys' fees and costs. Id. at 5.

On March 29, 2024, CGH filed a Complaint And Creditor's Bill In Equity in the Circuit Court for Prince William County, Virginia (the "Avoidance Case"), seeking *inter alia* to avoid the transfer of the VA Property as both a fraudulent and voluntary conveyance under Virginia law. Exh. 6 (omitting its exhibits). Very quickly, in obvious response to the Avoidance Case, the Debtor and his wife signed a Deed Of Gift on April 15, 2024, returning title of the VA Property to the Debtor's sole ownership. Such deed was recorded on April 19, 2024. Exh. 7.

Interestingly, the Debtor did not have the NC Property reconveyed to his sole ownership, presumably because he did not realize that CGH was aware of its initial transfer to T/E ownership. When CGH's counsel inquired at the creditors' meeting about the transfer of the NC Property, the Debtor testified that it was done pursuant to a prenuptial agreement with his current wife. Exh. 3 (Tr. at 4-7). The Debtor's Schedule G on file with this Court, which requires the disclosure of executory contracts, does not reference the existence of any prenuptial agreement.

Despite requests from CGH's counsel on September 24, 2024 and on October 9, 2024 to provide a copy of the prenuptial agreement, the Debtor has refused to produce it to counsel, despite having produced it to the Trustee.

The Judgment was docketed as a lien against the VA Property on November 29, 2023 in the Circuit Court of Prince William County, Virginia as Instrument #202311290061212. CGH is also secured by a writ of fi. fa. issued against the Bank Accounts, which was the subject of a prepetition garnishment summons directed to Bank of America. On September 18, 2024, CGH filed an amended proof of claim reflecting its claim in the amount of $1,181,651.07 as of the Petition Date, of which $426,765.70 is secured by the equity in the VA Property and $13,601.80 is secured by the balances in the Bank Accounts. As no objection to CGH's claim has been filed, it is deemed allowed. § 502(a). Other than the Debtor's primary mortgage obligation to Rocket Mortgage, his vehicle loan in favor of Bank of America, and the administrative claim of his attorney, the Debtor's other unsecured creditors in this case are owed the sum of $14,154.64. Exh. 8 (Trustee's Interim Statement as of 10/3/24). As such, CGH's claim represents more than 98.8% of the allowed claims herein. The Debtor's amended plan (DOC 25), which has been denied confirmation, proposed to compromise the allowed claims of his unsecured creditors at approximately 8%.

CGH has also filed a nondischargeability complaint against the Debtor in this Court, asserting that the Debtor's prepetition conduct as determined by the D.C. Superior Court–including breaching his fiduciary duties by competing against his former employer CGH, taking its intellectual property and sharing it with competitors, and subjecting CGH to damages by intentionally violating labor laws–warrants a finding of nondischargeability of the Judgment under § 523(a)(4) of the Bankruptcy Code. That matter remains pending.

Argument

CGH hereby adopts and incorporates herein the Trustee's Motion To Dismiss (DOC 13) and Amended Motion To Dismiss (DOC 29) filed in this case on June 24, 2024 and September 19, 2024, respectively.

The Debtor carries the burden of proof with respect to the elements necessary to confirm a plan in this case, including the element of good faith. In re Brandland, 570 B.R. 203, 212 & 217 (Bankr. E.D. Va. 2017) (citations omitted) (Kenney, J.). For the reasons that follow, the Debtor did not file the petition commencing this case in good faith and has not proposed a plan in good faith as required by §§ 1325(a)(3) and (a)(7) of the Bankruptcy Code. Because his lack of good faith cannot be cured by his filing another amended plan, there is "cause" to dismiss this case within the meaning of § 1307(c). See id., 570 B.R. at 205 & 212 (case dismissed where lack of good faith could not be remedied with an amended plan).

In assessing a Debtor's good faith in proceeding under Chapter 13, "the basic inquiry should be whether . . . there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan . . . ." Id. at 217 (quoting Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982) (additional citation omitted)). The totality of circumstances in the case must be reviewed, including (1) the percentage of proposed repayment; (2) the Debtor's financial situation; (3) the period of time payment will be made; (4) the Debtor's employment history and prospects; (5) the nature and amount of the unsecured claims; (5) the Debtor's past bankruptcy filings; (6) the Debtor's honesty in representing facts; (7) any unusual or exceptional problems facing the Debtor; and (8) whether the Debtor is attempting to discharge a debt that would be nondischargeable in Chapter 7. Id. at 217-218 (citations omitted).

Here, the totality of circumstances compel the conclusion that the Debtor's case must be dismissed. The case represents primarily a 2-party dispute. It was CGH's million dollar lawsuit against the Debtor that led him to fraudulently convey the NC Property and VA Property prepetition in an effort to put his valuable real estate beyond the reach of CGH.[1] When CGH filed the Avoidance Case to reverse the fraudulent transfer of the VA Property, signaling to the Debtor that it was onto him, he had the VA Property re-transferred to himself but continued to maintain the fraudulent T/E ownership of the NC Property.

In his bankruptcy schedules as originally filed, he omitted the NC Property from his schedule of assets. He also omitted his prenuptial agreement from the schedule of executory contracts. It was only after CGH's counsel referenced the NC Property during the creditors' meeting, that the Debtor filed amended schedules to disclose his interest in that asset, yet he continued to omit the prenuptial agreement and has refused to provide it to CGH's counsel for review, despite his position that it somehow justified the transfer of the NC Property in the first instance.

The Debtor also failed to disclose the full balance of the Bank Accounts on his list of assets, understating the balance by almost $13,600, even in the amended schedules that he filed after CGH raised the issue in its objection to the Debtor's first proposed Chapter 13 plan.

The allowed claims of the other unsecured creditors in this case total only $14,154.64, such that CGH's claim represents more than 98.8% of the total claims, excluding the Debtor's primary mortgage payment, car payment, and attorney's administrative expense. The Debtor's

---

[1] Numerous badges of fraud previously identified by this Court are present here. See Brandland, 570 B.R. at 215. For example, the Debtor transferred his real estate to T/E ownership with his wife for no consideration while he was being sued by CGH and had suffered a recent litigation defeat. He continued to share full ownership, possession, and control of the properties post-transfer.

most recently filed plan, which was denied confirmation, proposed to pay only about 8% towards his unsecured debts. Because his other debts are so nominal, it is also not clear that the Debtor requires the protection of bankruptcy to begin with. He and his wife make more than $312,000 per year and, as noted above, the Debtor owns valuable real estate in both Virginia and North Carolina. As set forth in its pending nondischargeability complaint, CGH believes that its claim is nondischargeable in any event.

If this case had been filed under Chapter 7 of the Bankruptcy Code rather than under Chapter 13, it is likely that the Debtor would be denied a discharge under §§ 727(a)(2) and (a)(4) for his fraudulent prepetition transfers of assets and his false oaths on the bankruptcy schedules. Accordingly, he is attempting to obtain a Chapter 13 discharge of debts that would have survived a Chapter 7 filing.

> Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an "abuse of the provisions, purpose, or spirit" of the Act, *especially where a major portion of the claims sought to be discharged arises out of prepetition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan.*

Neufeld v. Freeman, 794 F.2d 149, 152-53 (4th Cir. 1986), quoted in Brandland, 570 B.R. at 218.

The circumstances of this case fit squarely within this example set forth in Neufeld and, by virtue of the prepetition nature of the Debtor's fraud and dishonesty in connection with his real estate transfers and false oaths on his bankruptcy schedules, are not conducive to being rectified with another amended plan. See Broadland, 570 B.R. at 219.

WHEREFORE, CGH Technologies, Inc. requests that this Court grant this Motion, dismiss this case, and grant such other and further relief as it deems just and appropriate.

CGH TECHNOLOGIES, INC.
By counsel

/s/Steven B. Ramsdell
Steven B. Ramsdell, VA Bar #33222
Tyler, Bartl & Ramsdell, P.L.C.
300 N. Washington St., Suite 310
Alexandria, VA 22314
(703) 549-5003

### **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion was mailed first-class, postage prepaid, on this 16th day of October, 2024 to the following:

Glyn Neal Owen
1131 Tournai Ct.
Woodbridge, VA 22191

Michael J.O. Sandler, Esq.
Fisher-Sandler, LLC
12801 Darby Brooke Ct., Suite 210
Woodbridge, VA 22192

Thomas P. Gorman, Trustee
1414 Prince St., Suite 202
Alexandria, VA 22314

Office of the United States Trustee
1725 Duke St. Suite 650
Alexandria, VA 22314

/s/Steven B. Ramsdell
Steven B. Ramsdell